OPINIONS OF THE SUPREME COURT OF OHIO

**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State ex rel. Adams, Appellant, v. Teledyne Ohiocast et al., Appellees.
[Cite as State ex rel. Adams v. Teledyne Ohiocast (1994), Ohio St.3d    .]
Workers' compensation -- Application for temporary total disability compensation
    denied when condition has become permanent.
    (No. 93-2139 -- Submitted October 24, 1994 -- Decided December 14, 1994.)
    Appeal from the Court of Appeals for Franklin County, No. 93AP-80.
    In 1978, appellant-claimant, Claster Adams, alleged that he had contracted bilateral hearing loss from excessive noise exposure during the course of his twenty-six year employment with appellee Teledyne Ohiocast. A June 22, 1978 letter from Dr. William H. Saunders stated:
    "This letter will describe your recent consultation in June 1978.
    "We found you with a profound or severe sensorineural or inner ear type hearing loss in the right ear and a moderate sensorineural hearing loss in the left ear, cause undetermined. An electronystagmographic (balance mechanism) was normal.
    "The special x-ray films of the skull (internal auditory meati) were normal and there seems to be no evidence of tumor.
    "I would advise you to have another audiogram made in about one year and for most purposes, I think you would do well to wear a hearing aid in the left ear. A hearing aid would not be satisfactory to use in a noisy environment."
    Appellee Industrial Commission of Ohio eventually allowed the claim as an occupational disease. In 1980, claimant was examined by commission specialist Dr. Richard H. Wehr who reported that claimant "states that he is not doctoring at the present time, because of the 3 or 4 people that he has been to have all told him that nothing more can be done." The report's

later illegibility makes it impossible to tell whether Wehr characterized claimant's loss as reversible or irreversible. He concluded by assessing a fifteen percent permanent partial impairment.

In 1981, claimant moved to reactivate his claim, seeking, among other things, temporary total disability compensation from May 1, 1980 to September 1, 1981. Claimant's C85A claim reactivation form was completed by Dr. Nicholas B. Pavlatos who listed past and future treatment as periodic office calls for "examination, injections and medication" and certified claimant as temporarily and totally disabled over the above period.

Protracted litigation on other matters delayed the C85A's consideration until 1987. Several medical reports were submitted in the interim. Dr. Pavlatos' October 7, 1985 narrative documented that claimant's condition did not respond to treatment and had essentially remained unchanged. He noted that "[h]e was last seen and examined by me on November 23, 1982 at which time he was advised that I was unable to prescribe anything different and was unable to help with his deafness."

Claimant was also examined by Drs. Arthur Gardikes and William Licklider. The latter found claimant's hearing loss to be "permanent and I know of no medication that will reverse this hearing loss." Dr. Gardikes found that claimant could not return to his old job and that "his hearing loss is permanent and especially in comparison to the previous audiograms, he has not demonstrated any gain of his hearing."

A district hearing officer denied temporary total disability compensation, finding that claimant's condition was permanent. The decision was affirmed administratively. Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying temporary total disability compensation. The appellate court returned the cause to the commission for further consideration and amended order.

Soon thereafter, the employer solicited a statement from Dr. Saunders that read in its entirety:

In response to your letter of May 13, 1991, concerning Claster Adams, it is my opinion that the patient's hearing loss was permanent at the time I examined him in June, 1978."

The commission again denied temporary total disability compensation, writing:

"The claimant's request for the payment of temporary total compensation for the period 5/1/80 to the present time is denied. The Staff Hearing Officers find that the claimant's condition has been a permanent one since June, 1978. The Staff Hearing Officers further find that there is no evidence of new and changed circumstances in the claimant's condition since that time. This order is based on the medical reports of Dr. Saunders."

Claimant again sought a writ of mandamus from the appellate court. Finding "some evidence" of permanency, the court of appeals denied the writ.

This cause is now before this court on appeal as of right.

Michael J. Muldoon, for appellant.
Vorys, Sater, Seymour & Pease and Anne C. Griffin, for

appellee Teledyne Ohiocast.

Lee Fisher, Attorney General, and Jetta Mencer, Assistant Attorney General, for appellee Industrial Commission.

Per Curiam. Claimant contends that so long as he cannot return to his former position of employment -- an allegation that the parties do not seriously dispute -- he is entitled to temporary total disability compensation, regardless of the durational character of his condition. He alternatively claims that permanency, if relevant, is unsubstantiated. For the reasons to follow, we affirm the judgment of the appellate court.

Temporary total disability compensation is not payable to a claimant whose condition has become permanent. State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586. Claimant's initial proposition therefore, lacks merit since "permanency" is always relevant to a temporary total disability determination.

We next examine the order for the presence of "some evidence." Claimant assails the thirteen-year gap between Dr. Saunders' two reports. Dr. Saunders was not being asked to speculate as to the permanency of claimant's condition prior to ever having examined him. He was simply asked to clarify conclusions derived from his 1978 examination.

We question, however, whether Dr. Saunders was using the term "permanen[cy]" in the relevant Ramirez sense, i.e., reaching maximum medical improvement. R.C. 4123.56(A) As claimant accurately observes, a condition may be permanent, in that it cannot be completely resolved, yet it may also respond positively to treatment, making a declaration of "permanency" as used in Ramirez premature. State ex rel. Kaska, v. Indus. Comm. (1992), 63 Ohio St.3d 743, 591 N.E.2d 235; State ex rel. Bing v. Indus. Comm. (1991), 61 Ohio St.3d 424, 575 N.E.2d 177. "Permanency," therefore, may bar temporary total disability compensation only where "there is a clear indication that the claimant's condition will not improve." (Emphasis added.) Kaska at 746, 591 N.E.2d at 237.

Dr. Saunders' reference to "permanen[cy]" does not rise to this level. Neither report by Dr. Saunders expressly addresses the potential, or lack thereof, for improvement over the relevant period. Read together, the reports do no more than discuss the severity of claimant's condition and recount the tests performed.

The lack of "some evidence" supporting denial of compensation does not, however, translate into "some evidence" supporting its award. State ex rel. Lampkins v. Dayton Malleable, Inc. (1989), 45 Ohio St.3d 14, 542 N.E.2d 1105. In this case, the remaining evidence does not support payment of temporary total disability benefits. Even Dr. Pavlatos can not substantiate a condition amenable to further improvement. Without elaborating, Dr. Pavlatos certified temporary total disability from May 1, 1980 to September 1, 1981 on the C85A form. His 1985 detailed narrative, however, chronicles a condition that has not improved since its onset. His narrative can only be viewed one of two ways -- as equivocal or as a repudiation. Either way, the Pavlatos reports cannot be "some evidence" supporting temporary total disability. State ex rel.

Jennings v. Indus. Comm. (1982), 1 Ohio St.3d 101, 1 OBR 135, 438 N.E.2d 420; State ex rel. Paragon v. Indus. Comm. (1983), 5 Ohio St.3d 72, 5 OBR 127, 448 N.E.2d 1372.

The judgment of the appellate court is affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.