**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dillon v. Indus. Comm.,* Slip Opinion No. 2024-Ohio-744.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-744

THE STATE EX REL. DILLON, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dillon v. Indus. Comm.,* Slip Opinion No. 2024-Ohio-744.]**

*Workers' compensation—Total-temporary-disability compensation—R.C. 4123.511(K) requires Bureau of Workers' Compensation to recoup overpayment of total-temporary-disability compensation paid to an injured worker between time injured worker reached maximum medical improvement and date of termination of total-temporary-disability compensation—Court of appeals' judgment denying writ of mandamus affirmed—*State ex rel. Russell v. Indus. Comm. *overruled.*

(No. 2023-0152—Submitted August 22, 2023—Decided March 5, 2024.)

APPEAL from the Court of Appeals for Franklin County,

No. 20AP-600, 2022-Ohio-4773.

_____

**KENNEDY, C.J.**

{¶ 1} An order awarding appellant, Loretta Dillon, temporary-total-disability ("TTD") compensation was reversed on appeal by appellee Industrial Commission of Ohio because the commission determined that she had reached maximum medical improvement and was no longer temporarily disabled. R.C. 4123.511(K) then required the Bureau of Workers' Compensation to recoup the overpayment of compensation that Dillon had received after she had reached maximum medical improvement. Dillon filed an action in the Tenth District Court of Appeals, requesting a writ of mandamus to compel the commission to vacate the order that declared an overpayment of TTD compensation and to issue a new order dissolving the overpayment. Based on the plain language of R.C. 4123.511(K), the Tenth District correctly denied Dillon a writ of mandamus. We therefore affirm its judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 2, 2019, Dillon suffered a work-related back injury, and the bureau allowed her claim for "strain muscle, fascia, tendon lumbar." On appeal, a district hearing officer allowed her claim for lumbar sprain and strain and awarded TTD compensation for those conditions to continue with Dillon's submission of supporting medical proof of her disability. Dillon appealed the disallowance of her additional conditions, and her employer obtained an independent medical examination. The reviewing physician opined that Dillon had reached maximum medical improvement. Following a hearing on October 28, 2019, a staff hearing officer affirmed the disallowance of Dillon's additional conditions, agreed that she had attained maximum medical improvement, and terminated her TTD compensation as of August 8, 2019. However, by the time of the staff hearing officer's determination, Dillon had received TTD compensation after August 8, and the bureau therefore issued an order seeking to recoup the $5,549.40 that it had overpaid to her. Dillon appealed this determination. A district hearing officer and

three staff hearing officers found that recoupment was appropriate, and the commission denied further review.

{¶ 3} Dillon then sought a writ of mandamus from the Tenth District Court of Appeals to compel the commission to vacate the order that declared an overpayment of TTD compensation and to issue a new order dissolving the overpayment. The court of appeals denied the writ.

## II. ANALYSIS

### A. Standard of Review

{¶ 4} Dillon is entitled to a writ of mandamus if she shows by clear and convincing evidence that she has a clear legal right to the requested relief, that the commission has a clear legal duty to provide it, and that there is no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, 184 N.E.3d 81, ¶ 10. A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 9. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584, 679 N.E.2d 300 (1997). But "[a] mandatory writ may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law." *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65, 322 N.E.2d 660 (1975).

{¶ 5} Our consideration of the court of appeals' decision involves a question of statutory interpretation, so our review is de novo. *See Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8. "The question is not what did the general assembly intend to enact, but what is the meaning of that

which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said," *Jones v. Action Coupling & Equip., Inc*., 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, and apply the statute as written, *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18.

## B. TTD Compensation

**{¶ 6}** TTD compensation "compensates for the loss of earnings a claimant sustains while his or her injury heals." *State ex rel. Am. Std., Inc. v. Boehler*, 99 Ohio St.3d 39, 2003-Ohio-2457, 788 N.E.2d 1053, ¶ 22. It "is payable only to those with temporary disabilities." *Id.* at ¶ 28. Maximum medical improvement "describes a condition that has become permanent, i.e., one that will, ' "with reasonable probability, continue for an indefinite period of time without any present indication of recovery therefrom." ' " *Id.*, quoting *Vulcan Materials Co. v. Indus. Comm.*, 25 Ohio St.3d 31, 33, 494 N.E.2d 1125 (1986), quoting *Logsdon v. Indus. Comm.*, 143 Ohio St. 508, 57 N.E.2d 75 (1944), paragraph two of the syllabus. After maximum medical improvement has been attained, TTD compensation is no longer available—the condition is no longer temporary. *See State ex rel. Advantage Tank Lines v. Indus. Comm.*, 107 Ohio St.3d 16, 2005-Ohio-5829, 836 N.E.2d 550, ¶ 8. That does not leave the claimant without recourse; rather, he or she can then seek compensation for permanent disability, such as permanent-total-disability compensation. *See* R.C. 4123.58; *State ex rel. Matlack, Inc. v. Indus. Comm.*, 73 Ohio App.3d 648, 655, 598 N.E.2d 121 (10th Dist.1991).

## C. Recoupment of Overpayments of TTD Compensation

**{¶ 7}** R.C. 4123.511(K) addresses when the bureau or a self-insuring employer must recoup compensation payments made in accordance with an order that is subsequently reversed on appeal. Its language is unambiguous and provides:

Upon the final administrative or judicial determination under this section or section 4123.512 of the Revised Code of an appeal of an order to pay compensation, if a claimant is found to have received compensation pursuant to a prior order which is reversed upon subsequent appeal, the claimant's employer, if a self-insuring employer, or the bureau, shall withhold from any amount to which the claimant becomes entitled pursuant to any claim, past, present, or future, under Chapter 4121., 4123., 4127., or 4131. of the Revised Code, the amount of previously paid compensation to the claimant which, due to reversal upon appeal, the claimant is not entitled * * *.

{¶ 8} Here, Dillon "received compensation pursuant to a prior order which [was] reversed upon subsequent appeal." The bureau "previously paid compensation to [Dillon] which, due to reversal upon appeal, [Dillon] is not entitled." Because the order was reversed, she was not entitled to TTD compensation after August 8, 2019. Nor was she allowed to retain what she had previously been paid under the reversed order; R.C. 4123.511(K) required the bureau to "withhold from any amount to which the claimant becomes entitled pursuant to any claim * * * the amount of previously paid compensation to the claimant." Under the plain language of the statute, then, the bureau correctly recouped the "previously paid" TTD compensation that Dillon received after she reached maximum medical improvement from any future benefits she might receive, such as an award of permanent-total-disability compensation.

### D. R.C. 4123.56(A) and *Russell*

{¶ 9} In support of her argument that recoupment is not warranted in this case, Dillon relies on *State ex rel. Russell v. Indus. Comm.*, 82 Ohio St.3d 516, 696 N.E.2d 1069 (1998), in which this court construed a prior version of R.C.

4123.56(A) and the predecessor to R.C. 4123.511(K), former R.C. 4123.511(J). (This opinion will refer to both former R.C. 4123.511(J) and R.C. 4123.511(K) as R.C. 4123.511(K).)

{¶ 10} According to *Russell*, "R.C. 4123.511[K] simply provides for withholding future payments to recoup an overpayment when a claimant is found to have received compensation to which [the claimant] was not entitled." *Russell* at 521. This court stated that "[t]he question of [a] claimant's entitlement to receive ongoing TTD compensation until a hearing officer rules otherwise is governed by R.C. 4123.56, not [R.C.] 4123.511[K]." *Russell* at 521.

{¶ 11} R.C. 4123.56(A) states:

> In the case of a self-insuring employer, payments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer pursuant to division (C) of section 4123.511 of the Revised Code. Payments shall continue pending the determination of the matter, however payment shall not be made for the period * * * when the employee has reached the maximum medical improvement.

{¶ 12} Based on the prior version of this provision and prior precedent, the court in *Russell* explained:

> (1) that continuing TTD compensation may not be terminated prior to a hearing before a commission hearing officer so long as [the] claimant's attending physician continues to certify TTD, (2) that the hearing officer may not terminate the claimant's TTD retroactive to

a date prior to the date of the hearing, (3) that [the] claimant is entitled to all compensation paid to the date of the hearing, and (4) that any eventual discounting of the attending physician's reports certifying TTD does not transform those payments into a recoupable overpayment.

*Russell*, 82 Ohio St.3d at 519, 696 N.E.2d 1069. Relying on R.C. 4123.56(A), the court in *Russell* concluded that "the appropriate date on which to terminate disputed TTD compensation on the basis of maximum medical improvement is the date of the termination hearing, and the commission may not declare an overpayment for payments received by the claimant before that date." *Id.*

{¶ 13} Initially, by its terms, the relevant part of R.C. 4123.56(A) is limited to "the case of a self-insuring employer." Dillon's case does not involve a self-insuring employer. But in *Russell*, we relied on former R.C. 4121.31(C) for the proposition that "uniformity of application [between state fund and self-insuring employers] is required" to explain that R.C. 4123.56(A) also applies to payments made by the bureau. *Russell* at 520, fn. 1. The version of R.C. 4121.31(C) in effect at the time that the court decided *Russell*, now recodified as R.C. 4121.31(A)(3), directed the administrator of workers' compensation and the Industrial Commission to "adopt rules covering the following general topics with respect to [R.C. Chapters 4121 and 4123]: * * * All claims, whether of a state fund or self-insuring employer, be processed in an orderly, uniform, and timely fashion." Am.Sub.H.B. No. 107, 145 Ohio Laws, Part II, 2990, 3077. A requirement to adopt rules to process claims in a uniform fashion is a far cry from a statutory requirement to treat the bureau and self-insuring employers the same for all purposes in workers' compensation law.

{¶ 14} But even if this court in *Russell* correctly determined that the relevant statutory language applies to payments made by the bureau, R.C. 4123.56(A) does not permit a claimant to receive TTD compensation after reaching

maximum medical improvement. If the employer disputes the attending physician's report, TTD compensation is paid to the claimant until payments are terminated following a hearing before the district hearing officer. Although R.C. 4123.56(A) requires payments to continue "during the determination of the matter," the provision contains an exception: TTD compensation may not be paid for the period after the employee has reached maximum medical improvement. This means that Dillon was not entitled to receive TTD compensation once she reached maximum medical improvement and her condition became permanent.

{¶ 15} This court reasoned in *Russell* that a claimant who has received an award of TTD compensation remains "entitled" to receive payments for purposes of R.C. 4123.511(K) until TTD compensation is formally terminated after a hearing. *Russell*, 82 Ohio St.3d at 519-523, 696 N.E.2d 1069. And because the claimant was entitled to receive TTD compensation during that time, the court explained, the bureau was not permitted to recoup payments made after the claimant reached maximum medical improvement but before TTD compensation was terminated. *Id.* But that conclusion cannot be squared with R.C. 4123.56(A)'s prohibition on a claimant's receiving payments after attaining maximum medical improvement. If TTD payments may not be made after the claimant reaches maximum medical improvement, then the claimant is not entitled to them. And if the claimant is not entitled to those payments, then R.C. 4123.511(K) requires the bureau to withhold the amount previously paid from compensation that the claimant may receive in the future.

{¶ 16} Moreover, this court in *Russell* ignored language in R.C. 4123.511(K) when it held that the statute does not permit recoupment of payments made under an order before its reversal, *Russell* at 521. The statute provides criteria under which payments will be recouped, stating that "[t]he administrator and self-insuring employers, as appropriate, are subject to the repayment schedule of this division only with respect to an order to pay compensation that was *properly paid*

*under a previous order*, but which is subsequently reversed upon an administrative or judicial appeal" (emphasis added), R.C. 4123.511(K). This language clarifies that payments "properly paid" to the claimant before the order was reversed on appeal may nonetheless be recouped. Even under *Russell*'s reasoning that an injured worker is entitled to receive TTD compensation until it is formally terminated, recoupment is required.

{¶ 17} As this analysis shows, this court's reasoning in *Russell* runs counter to the plain language of R.C. 4123.511(K) and R.C. 4123.56(A). Because *Russell* was wrongly decided, we overrule it and its progeny today. By applying the plain language of R.C. 4123.511(K), the bureau correctly ordered the recoupment of TTD compensation payments that Dillon received after she reached maximum medical improvement from any future benefits she might receive.

### III. CONCLUSION

{¶ 18} After the Industrial Commission reversed on appeal the order awarding Dillon TTD compensation, R.C. 4123.511(K) required the bureau to recoup the overpayment of compensation that she received between the time she reached maximum medical improvement and the time her TTD compensation was terminated. The Tenth District Court of Appeals therefore correctly denied Dillon's request for a writ of mandamus ordering the commission to vacate the order that declared an overpayment of TTD compensation and to issue an order dissolving the overpayment. For this reason, we affirm its judgment.

Judgment affirmed.

FISCHER, DEWINE, and DETERS, JJ., concur.

BRUNNER, J., dissents, with an opinion joined by DONNELLY and STEWART, JJ.

_____

**BRUNNER, J., dissenting.**

{¶ 19} Today the majority eliminates more than 25 years of precedent that allowed an injured worker to continue receiving temporary-total-disability compensation under R.C. 4123.56 while a dispute regarding whether the injured worker has reached maximum medical improvement is pending before the Industrial Commission of Ohio. The majority, on its own initiative, has summarily concluded that *State ex rel. Russell v. Indus. Comm.*, 82 Ohio St.3d 516, 696 N.E.2d 1069 (1998), "and its progeny" were wrongly decided. Majority opinion, ¶ 17. This decision to overrule our long-standing precedent is unnecessary and unwarranted.

{¶ 20} No party in this case has directly or implicitly asked this court to overrule *Russell*. We did not receive any written argument or hear any oral argument from the parties requesting that we gratuitously reshape a quarter of a century's worth of jurisprudence in workers' compensation law. The majority opines, unbidden, that *Russell* was wrongly decided—a decision that will have a grave impact on injured workers. Today's decision defies practical workability, does not demonstrate *why Russell* was wrongly decided *at the time it was decided*, and clearly creates a hardship for appellant, Loretta Dillon, and other injured workers who rely on it. We have generally adhered to the principal of stare decisis unless, after careful consideration, we find that the following factors have been met:

> (1) the decision was wrongly decided at that time, or changes in
> circumstances no longer justify continued adherence to the decision,
> (2) the decision defies practical workability, and (3) abandoning the
> precedent would not create an undue hardship for those who have
> relied upon it.

*Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d

1256, ¶ 48. Overruling *Russell* without considering those factors is an attack on the rule of law, and doing so damages one of the essential principles of stare decisis—predictability. The Tenth District Court of Appeals recently eloquently explained the importance of stare decisis:

> Under the legal doctrine of stare decisis, courts follow controlling precedent, thereby creating stability and predictability in our legal system. Courts adhere to stare decisis as a means of thwarting the arbitrary administration of justice as well as providing a clear rule of law by which the citizenry can organize their affairs. The doctrine is of fundamental importance to the rule of law. This court is bound by the doctrine of stare decisis and must follow our own court's precedent. We will not depart from the doctrine of stare decisis without special justification.

(Internal citations omitted.) *Liberty Mut. Ins. Co. v. Three-C Body Shop, Inc.*, 10th Dist. Franklin No. 19AP-775, 2020-Ohio-2694, ¶ 13. This court too is bound by stare decisis and should only depart from it when special justification exists.

{¶ 21} In this case, Dillon argues that our holding in *Russell* should be applied here and that it supports her right to relief in mandamus. In response, appellee Industrial Commission argues that our analysis in *Russell* can be distinguished and does not control the overpayment issue presented in this case. Therefore, this court is presented with only one question: whether our holding in *Russell* should be applied to this case or distinguished from it. None of the parties argue that our holding in *Russell* is no longer good law. And the majority can—in fact, the majority *does*—reach its decision to deny Dillon's request for a writ of mandamus without even looking to *Russell*. *See* majority opinion at ¶ 1, 14. This makes the majority's overruling of *Russell* even more dubious.

**{¶ 22}** I acknowledge that circumstances arise that invoke our duty to reexamine this court's precedents, such as when a prior decision of this court becomes irreconcilable with the circumstances presented in a case, *see Galatis* at ¶ 43, and in those instances, we are called on to review and, if necessary, overrule those precedents. But that duty has not shown its face here. And we should be even more cautious in reversing precedent involving our interpretation of statutes, especially when those statutes remain unchanged by their creators, the legislature. *See Allen v. Milligan*, 599 U.S. 1, 39, 143 S.Ct. 1487, 216 L.Ed.2d 60 (2023) ("Congress is undoubtedly aware of our construing [the Voting Rights Act] to apply to districting challenges. It can change that if it likes. But until and unless it does, statutory *stare decisis* counsels our staying the course").

**{¶ 23}** It is fair to say that the General Assembly has been aware of our interpretation and application of R.C. 4123.56 for more than 25 years, and the Industrial Commission has incorporated our holding in *Russell* into its adjudicatory policies and procedures. The commission instructs its hearing officers that "[w]hen terminating ongoing temporary total disability compensation due to a finding of maximum medical improvement, temporary total disability compensation shall be paid through the date of the hearing at which the compensation is being terminated," and it specifically references this court's decision in *Russell*. *Adjudications Before the Ohio Industrial Commission* (updated July 2022), at 14, available at https://www.ic.ohio.gov/about-ic/resource-library/resource-pdfs/adjudications-before-oic.pdf (accessed Jan. 25, 2024).

**{¶ 24}** Seeing as how the General Assembly has not taken action to modify R.C. 4123.56 since this court's interpretation of that statute in *Russell*, we have no basis for now concluding that our interpretation of the statute was unjust or inappropriate when we decided *Russell*. The law calls for applying our holding in *Russell* here, and we are bound to stay the course.

**{¶ 25}** The majority, before turning to any analysis of *Russell*, looks to R.C.

12

4123.511(K) to find authority for the overpayment assessed against Dillon. But R.C. 4123.511(K) does not apply here. That statutory division provides that "if a claimant is found to have received compensation pursuant to a prior order *which is reversed upon subsequent appeal*," the Bureau of Worker's Compensation must withhold "from any amount to which the claimant becomes entitled * * * the amount of previously paid compensation to the claimant which, due to reversal upon appeal, the claimant is not entitled [to]." (Emphasis added.) R.C. 4123.511(K). The order under which Dillon was receiving compensation has never been reversed.

{¶ 26} In a decision issued June 18, 2019, a district hearing officer allowed Dillon's claim for lumbar sprain and strain, awarding her temporary-total-disability compensation from April 9, 2019, through May 9, 2019, and allowing compensation "to continue with the submission of supporting medical proof." Dillon appealed the district hearing officer's disallowance of her other claims. The employer took no action to challenge the district hearing officer's order.

{¶ 27} Dillon's appeal was heard by a staff hearing officer on October 28, 2019. The staff hearing officer affirmed the decision issued by the district hearing officer allowing Dillon's claim for lumbar sprain and strain and disallowing her other claims. The staff hearing officer then made *new* findings, based on evidence that had been submitted *after* the hearing before the district hearing officer. The staff hearing officer determined that based on a physician's report dated August 21, 2019, Dillon was no longer eligible for continuing compensation, because she had reached maximum medical improvement on August 8, 2019. But this determination affected only ongoing compensation that was paid to Dillon after the district-level hearing in June—compensation that would have eventually terminated at some future date. The staff hearing officer's determination did not *reverse* any prior decision of the commission.

{¶ 28} Thus, the legal question raised in Dillon's mandamus action is not

within the purview of R.C. 4123.511(K)—Dillon did not receive any benefits she was not entitled to "due to reversal upon appeal." The commission does not argue that R.C. 4123.511(K) controls the issue of Dillon's overpayment. R.C. 4123.511(K) is not even mentioned in the commission's merit brief—because it simply does not apply here.

{¶ 29} Dillon instead relies on *Russell* and our interpretation of the language in R.C. 4123.56(A), which provides that "payments shall continue pending the determination of the matter." In *Russell*, a dispute arose regarding the attending physician's report, and we determined that the injured worker could not be assessed an overpayment for compensation received prior to the date of the hearing terminating the compensation. *Russell*, 82 Ohio St.3d 516, 696 N.E.2d 1069, at syllabus. The same result should follow here. Until the General Assembly legislates otherwise or we are presented with a case that cannot be reconciled with our prior interpretation of R.C. 4123.56(A), we are bound to apply our holding in *Russell* and find that Dillon has a clear legal right to receive compensation until the date of the hearing that resulted in the decision to terminate her temporary-total-disability compensation.

{¶ 30} Even if Dillon's case can or should be distinguished from *Russell* in the manner argued by the commission, nothing compels us to overrule *Russell*. The General Assembly holds the power to change the law when it disagrees with our decisions interpreting a statute. To remain neutral arbiters, we must be careful to not judge "the wisdom of the legislature's policy choices," *Erickson v. Morrison,* 165 Ohio St.3d 76, 2021-Ohio-746, 176 N.E.3d 1, ¶ 34. Here, we must respect that the General Assembly has not spoken for 25 years since we interpreted the statute's application in *Russell*.

{¶ 31} The majority commits grave damage to the rule of law in gratuitously overruling *Russell*. Dillon's petition for a writ of mandamus should be granted because, based on the law as it has existed for the past 25 years under this

court's holding in *Russell*, she has a clear right to the relief she has requested and the commission has a clear legal duty to provide that relief. Today, a majority of this court despoils a settled area of the law that Ohio's injured workers have relied on for more than a quarter of a century. The majority's decision today is nothing more than raw judicial activism, and I therefore respectfully dissent.

DONNELLY and STEWART, JJ., concur in the foregoing opinion.

————————————

Knisley Law Offices, and Kurt A. Knisley, for appellant.

Dave Yost, Attorney General, and Natalie J. Tackett, Assistant Attorney General, for appellee Industrial Commission of Ohio.

Porter, Wright, Morris & Arthur, L.L.P., and Diane C. Reichwein, for appellee Jefferson Industries Corporation.

————————————